# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Flynn, : 
                Petitioner : 
                        : 
        v. : No.  512 M.D. 2019
                        : Submitted:  May 1, 2020
Pennsylvania Department of : 
Corrections, : 
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE PATRICIA A. McCULLOUGH, Judge
                   HONORABLE J. ANDREW CROMPTON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE CROMPTON                   FILED:  September 3, 2020

Joseph Flynn (Petitioner) petitions for review in this Court's original jurisdiction challenging removal from his work assignment by the Pennsylvania Department of Corrections (DOC) (Respondent). Petitioner argues that he was inappropriately removed from his work assignment at the State Correctional Institution at Forest (SCI-Forest) following a disciplinary incident.  Respondent filed Preliminary Objections (Objections) to Petitioner's Petition for Review (Petition). Respondent asserts that Petitioner has failed to state any claims upon which relief may be granted.  Upon review, concluding that we lack jurisdiction to consider the Petition, we dismiss the Petition and do not reach Respondent's Objections.

## I.     Background

Petitioner is an inmate presently incarcerated at SCI-Forest.  Petition at 1.  Prior to May 6, 2019, Petitioner worked as a kitchen employee within the facility. *Id.* at 2.  On April 24, 2019, Petitioner was sanctioned with seven days loss of day room time due to informal misconduct charges. *Id.*  Petitioner faced charges because he "ha[d] a plastic knife to compromise the bathroom door. . . ." Pet'r's Br. at 5.  On May 6, 2019, Kevin Dittman, the Food Service Manager at SCI-Forest, moved to remove Petitioner from his kitchen employment.  Petition at 2.

Petitioner alleges that his removal from his kitchen employment was "based solely on informal misconduct charges or events" and that Respondent's actions constitute a violation of his due process rights. *Id.*  Petitioner further argues that Respondent "circumvented" the process outlined in 37 Pa. Code § 93.10,[1] which

---

[1] 37 Pa. Code § 93.10 states:

> (a)  Rules which define expectations and prohibitions for inmate behavior will be established by the Department and disseminated to the inmate population. There shall be two classes of misconduct charges, Class I and Class II.
> (1)  Inmates found guilty of Class I misconduct charges may be subjected to one or more of the following sanctions:
> (i)  Reduction of the classification of the misconduct to a Class II and any sanction permitted for Class II misconducts.
> (ii)  A sanction permitted for Class II misconducts, without change in class of misconduct.
> (iii) Change of cell assignment, including placement in the restricted housing unit or restrictive confinement in a general population cell for a period not to exceed 90 days for any one misconduct charge.
> (iv) Change of program level.
> (2)  Inmates found guilty of Class II misconducts may be subjected to one or more of the following sanctions:
> (i)  Reprimand.

governs formal misconduct sanctions for inmates. *Id.* Petitioner asserts that Respondent inappropriately utilized DOC Policy DC-ADM 816, which relates to inmate compensation, to remove him from his employment. *Id.*

Petitioner filed a grievance with SCI-Forest under DC-ADM 804, the inmate grievances policy, challenging his removal from his job. Resp't's Br. at 4. Petitioner's grievance was denied on May 17, 2019, and Petitioner subsequently filed a grievance appeal with the Facility Manager at SCI-Forest. Pet'r's Br. at Attachments B, D. In its Final Appeal Decision, the facility stated that the records

(ii) Suspension of privileges for a specified period of time.

(iii) Payment of the fair value of property lost or destroyed or for expenses incurred as a result of the misconduct.

(iv) Change of cell assignment excluding placement in the restricted housing unit.

(v) Change, suspension or removal from job.

(b) Written procedures which conform to established principles of law for inmate discipline including the following will be maintained by the Department and disseminated to the inmate population:

(1) Written notice of charges.

(2) Hearing before an impartial hearing examiner or an informal resolution process for charges specified by the Department in the Department of Corrections Inmate Handbook, or any Department document that is disseminated to inmates. The informal resolution process is described in DC-ADM 801 -- Inmate Discipline. The process gives inmates the option to meet with staff to resolve a misconduct rather than proceed with a hearing.

(3) Opportunity for the inmate to tell his story and to present relevant evidence.

(4) Assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively.

(5) Written statement of the decision and reasoning of the hearing body, based upon the preponderance of the evidence.

(6) Opportunities to appeal the misconduct decision in accordance with procedures in the Department of Corrections Inmate Handbook.

3

indicate that Petitioner was "staffed out of the kitchen for a variety of reasons." *Id.* Petitioner's requested relief was denied on July 3, 2019. *Id.* Petitioner filed a Petition with this Court on September 10, 2019.[2] Respondent demurs, submitting Objections on November 6, 2019.

## II. Discussion

Petitioner argues that Respondent erred in removing Petitioner from his kitchen service job because the decision was based inappropriately on a prior "informal misconduct" incident for which Petitioner had already received an "informal resolution" of seven days loss of day room privileges. Petitioner asserts that in order for an inmate to be permanently removed from employment, the inmate must be found guilty under a Class I or Class II misconduct violation under 37 Pa. Code § 93.10(b). Petitioner argues that his removal process was conducted through DC-ADM 816, circumventing the regulatory requirements for inmate discipline outlined in 37 Pa. Code § 93.10.

In his Petition to this Court, Petitioner requests enjoinment of Respondent from permanently removing him from his job, reinstatement in his

---

[2] In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595 (Pa. Cmwlth. 1994). However, the Court is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on his claim, and we must resolve any doubt in favor of the petitioner. *Id.* When considering preliminary objections in the nature of a demurrer, we may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted. *Clark v. Beard*, 918 A.2d 155 (Pa. Cmwlth. 2007). Moreover, we have held that "a demurrer cannot aver the existence of facts not apparent from the face of the challenged pleading." *Martin v. Dep't of Transp.*, 556 A.2d 969, 971 (Pa. Cmwlth. 1989).

4

previous kitchen employment, and a prohibition on harassment or retaliation by SCI-Forest staff for filing the Petition. Additionally, Petitioner seeks a declaration stating that his due process rights under 37 Pa. Code § 93.10 were violated by Respondent. Finally, Petitioner seeks damages and costs, particularly back pay, associated with his removal from his work position. Petition at 3.

Under 37 Pa. Code § 93.10(a)(2)(v), an inmate that is found guilty of a Class II misconduct[3] may be subject to "change, suspension or removal from job." 37 Pa. Code § 93.10(a)(2)(v). However, this type of sanction requires a formal misconduct procedure, including written notice and a hearing before an impartial hearing examiner. *See* 37 Pa. Code § 93.10(b). Therefore, if a facility wishes to impose a job-related sanction in response to a Class II misconduct by an inmate, the formal misconduct procedure must be utilized in full.

DOC facilities also have internal policies to facilitate sanctions for informal misconduct. DC-ADM 801 states that select Class I or Class II charges may be resolved by an Informal Resolution Action. As a result of informal resolution, an inmate may be sanctioned to "up to 14 days loss of specified privileges (telephone, yard, day room, tablet usage, kiosk access, etc.)." Section 2.B.1.d of DC-ADM 801.

---

[3] Class I & II Misconduct Charges are listed in the DC-ADM 801, *Inmate Discipline Procedures Manual* at Attachment 1-A. We take judicial notice of the Inmate Handbook, which appears on the DOC official website at: http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf. *See Figueroa v. Pa. Bd. of Prob. and Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website) (last visited Sept. 2, 2020).

Removal of an inmate from a work assignment need not necessarily be tied to inmate misconduct and sanctioning. Under DC-ADM 816, an inmate may be removed from a work assignment for reasons other than misconduct and medical necessity. Section 1.M.7 of DC-ADM 816. This type of removal must be handled by a Unit Management Team action and the inmate's supervisor must provide written information about the proposed removal action. *Id*.

When the issuance of a misconduct is not the impetus for the removal of one from his job, DC-ADM 816, and not 37 Pa. Code § 93.10, is applicable. *See Bronson v. Wetzel* (Pa. Cmwlth., No. 576 M.D. 2018, filed September 13, 2019), 2019 Unpub. LEXIS 520.[4] An inmate may be "removed from a work/school assignment due to failure to perform, poor attitude, not being available for work/school, or no longer housed in the general population, etc." DC-ADM 816, Section 1.B.3. An inmate "is not eligible for compensation until he/she is reinstated to a work/school assignment by the Unit Management Team." *Id.*

Petitioner argues that his removal from his kitchen work assignment on May 6, 2019, was imposed as a sanction associated with his April 24, 2019, informal misconduct proceedings. As a result, Petitioner asserts that Respondent violated his due process rights because his job removal was not achieved through the requirements outlined in 37 Pa. Code § 93.10. However, Respondent maintains that Petitioner received a sanction of seven days without day room privileges as a result

---

[4] This case is cited for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

of his informal misconduct on April 24, 2019, and that he was removed from his kitchen job for separate and unrelated reasons under DC-ADM 816 on May 6, 2019.[5]

Petitioner cites *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010), and *Williams v. Wetzel*, 222 A.3d 49 (Pa. Cmwlth. 2019) (granting petitioner declaratory and injunctive relief) *rev'd*, *Williams v. Wetzel*, _ A.3d _ (Pa., No. 95 MAP 2019, filed June 16, 2020), in support of his argument that his due process rights have been violated through his removal from his kitchen employment. In *Bush*, an inmate was removed from his employment following informal misconduct proceedings. *Bush,*

---

[5] It is important to note that the Attachment to the Petition does not support Petitioner's claim that his job removal was an additional, associated sanction from his April 24, 2019 informal misconduct. In its Final Appeal Decision dated July 23, 2019, Respondent stated, "The record shows that [Petitioner was] staffed out of the kitchen for a variety of reasons." Petition at Attachment A. Under DC-ADM 816, an inmate may be staffed out of a position for reasons other than misconduct or medical necessity. Section 1.M.7 of DC-ADM 816. A Unit Management Team action and a written explanation from an inmate's supervisor is necessary to utilize this job removal process. *Id.*

Petitioner references "Support Team" and "Support Team Action" within his brief, admitting to the fact that a Unit Management Team action occurred with regard to his removal from his job. Pet'r's Br. at 10. Petitioner includes Respondent's Final Appeal Decision as "Attachment A" to his Petition, which states, "The facility responses are upheld to include the quoting of DC ADM 816." Petition at Attachment A. Further, Respondent's provided explanation that Petitioner was "staffed out of the kitchen for a variety of reasons" was issued by Kevin Dittman, the Food Service Manager at SCI-Forest. Petition at Attachment A; Resp't's Br. at 10-11.

Therefore, Petitioner attaches documents showing that Respondent followed the procedure as mandated by DC-ADM 816. A Unit Management Team action occurred and Petitioner's statement provided an explanatory statement about Petitioner's job removal. "Attachment A" does not reference Petitioner's informal misconduct on April 24, 2019, citing only "a variety of reasons" for his job removal. While Petitioner argues that his job removal was a result of the informal misconduct, thus triggering a 37 Pa. Code § 93.10 procedural requirement, Respondent's job removal action was unrelated to the informal misconduct for which Petitioner received a sanction of seven days' loss of day room privileges prior to his job removal.

1 A.3d 981. This Court held that the inmate's due process rights were violated because the removal of an inmate from work duties as a sanction for misconduct must be done through the procedure of 37 Pa. Code § 93.10. *See id.*

In *Williams*, an inmate was not issued a formal misconduct for an eligible offense, but was instead subject to the policy outlined in DC-ADM 816. *Williams v. Wetzel*, 178 A.3d 920, 922 (Pa. Cmwlth. 2018) (overruling respondents' preliminary objections). The inmate was sanctioned with removal from his job. *Id.* However, this Court held that the sanction was inappropriate because the DOC used the DC-ADM 816 procedure, not 37 Pa. Code § 93.10. *See id.*

While Petitioner in the present case argues that he was subject to a sanction in violation of his due process rights and attempts to draw a comparison to the holdings of this Court in *Bush* and *Williams*, Petitioner does not account for the subsequent appellate history within this area of case law. The Pennsylvania Supreme Court reversed and remanded this Court's decision in *Williams* (2019), holding that this Court lacks original jurisdiction if an inmate does not assert a constitutionally protected liberty or property interest. *See Williams v. Wetzel*, _ A.3d _ (Pa., No. 95 MAP 2019, filed June 16, 2020).

"Prison inmates do not enjoy the same level of constitutional protections afforded to non-incarcerated citizens." *Bronson v. Cent. Office Review Comm.*, 721 A.2d 357 (Pa. 1998). "[L]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515

U.S. 472, 485 (1995) (quoting *Price v. Johnston*, 334 U.S. 266, 285 (1948)). "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Sandin*, 515 U.S. at 485.

A jurisdictional impediment to judicial review may be raised by appellate courts of their own accord. *Williams v. Wetzel*, _ A.3d _ (Pa., No. 95 MAP 2019, filed June 16, 2020). "The question whether a court has jurisdiction … may be raised at any time in the course of the proceedings, including by a reviewing court *sua sponte*." *Id.* at 3 (quoting *Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cty*, 32 A.3d 639, 646 (2011)). We raise the issue of jurisdiction on the basis that Petitioner did not raise a constitutionally-protected liberty or property interest for which this Court may consider due process challenges.

"The general rule continues to be that removal from a job assignment is deemed to be an administrative matter with which courts are loath to interfere." *Williams v. Wetzel*, _ A.3d _ (Pa., No. 95 MAP 2019, filed June 16, 2020) (quoting 2 Rights of Prisoners §8.6 (5th ed. 2019)). "Inmates do not have a liberty or property interest in their job assignments that would give rise to Due Process Clause protection." *Id.* at 3, n.1 (quoting *Watson v. Sec'y Pa. Dep't of Corr.*, 567 F. App'x 75, 78 (3d Cir. 2014)). Petitioner asserts that his due process rights were violated because the facility utilized DC-ADM 816, as opposed to 37 Pa. Code § 93.10, to remove him from his kitchen work assignment. However, because Petitioner does not have a liberty or property interest in his kitchen work, this Court lacks jurisdiction to review the Petition.

### III. Conclusion

Because an inmate's job does not constitute a liberty or property interest, this Court does not have jurisdiction to consider Petitioner's due process challenges. We therefore dismiss the Petition and do not reach Respondent's Objections.

_____
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joseph Flynn, :
     Petitioner :
            :
    v. : No. 512 M.D. 2019
            :
Pennsylvania Department of :
Corrections, :
     Respondent :

# **O R D E R**

  **AND NOW**, this 3rd day of September 2020, the Petition for Review filed by Joseph Flynn against the Department of Corrections (Respondent) is **DISMISSED** for lack of jurisdiction. Respondent's preliminary objections are **DISMISSED as moot**.

            _____
            J. ANDREW CROMPTON, Judge