# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James H. Williams, : 
               Petitioner : 
         : 
            v. : No. 82 M.D. 2017
         : Submitted: September 22, 2017
John E. Wetzel (Secretary of : 
Corrections) Dorina Varner (Chief : 
Grievance Officer) Barry Smith : 
(Facility Manager, S.C.I. Houtzdale) : 
Susan McQuillen (I/M Employment : 
Officer) (Houtzdale) Ginter (Unit : 
Manager, S.C.I. Houtzdale) Pittsinger : 
(Food Service Manager, Houtzdale) : 
Derring (Food Service Staff Member, : 
Houtzdale) Pa. Department of : 
Corrections Officials, : 
            Respondents :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE J. WESLEY OLER, JR., Senior Judge

**OPINION BY JUDGE BROBSON**       **FILED: January 25, 2018**

Before this Court in our original jurisdiction are the preliminary objections filed by officers and employees of the Pennsylvania Department of Corrections (DOC) to a petition for review filed by James H. Williams (Williams), acting *pro se*. For the reasons set forth below, we overrule DOC's preliminary objections.

According to the allegations in the petition for review, Williams is an inmate at the State Correctional Institution at Houtzdale (SCI-Houtzdale), where he maintained a job assignment in the facility's kitchen. On December 30, 2016, a

DOC officer performed a routine pat search on Williams prior to Williams leaving work. The officer discovered approximately two and one-half pounds of sugar concealed in Williams' boots. DOC did not issue Williams a misconduct report (DC-141) for this transgression.

On January 1, 2017, Williams filed an inmate grievance with DOC, alleging that DOC removed Williams from his job assignment without first affording him due process. (Official Inmate Grievance, attached to Petition for Review (PFR).) Specifically, Williams alleged that in order for DOC to remove Williams from his job assignment, DOC must first afford Williams a hearing pursuant to DOC policy DC-ADM 801 and 37 Pa. Code § 93.10,[1] relating to inmate discipline.

On January 4, 2017, prior to DOC responding to Williams' grievance, a DOC Unit Manager conducted a Support Team hearing at Williams' cell door. (PFR at 5.) During this hearing, the Unit Manager informed Williams that Williams' work supervisor sent an email to the Unit Management Team regarding Williams' transgression, and that, as a result, the Unit Management Team removed Williams from his job assignment. (*Id.*)

---

[1] DOC's regulation set forth in 37 Pa. Code § 93.10 outlines the sanctions applicable when DOC issues a DC-141. Before DOC can impose a sanction under this regulation, however, DOC must follow the procedures set forth in subsection (b) of the regulation. The procedures in subsection (b) include: (1) written notice of charges; (2) hearing before an impartial hearing examiner or an informal resolution process for charges specified in the DOC Inmate Handbook; (3) an opportunity for the inmate to tell his story and present relevant evidence; (4) assistance from an inmate or staff member at the hearing if the inmate is unable to collect and present evidence effectively; (5) a written statement of the decision and reasoning of the hearing body based upon the preponderance of the evidence; and (6) an opportunity to appeal the decision in accordance with the DOC Inmate Handbook. 37 Pa. Code § 93.10(b).

On January 17, 2017, DOC denied Williams' grievance. (Initial Review Response, attached to PFR.) The denial provided that the procedures set forth in 37 Pa. Code § 93.10(b) did not apply, because Williams' removal was not the result of the issuance of a DC-141. Instead, DOC asserted that Section 1.M.7 of DC-ADM 816[2] controlled Williams' removal. (*Id.*) Moreover, Section 1.B.6 of DC-ADM 816 provides that inmates do not have a right to be assigned or continue any specific work assignment. On that basis, DOC denied Williams' grievance.

Williams appealed this decision to the facility manager, arguing that because he "committed a misconduct," DOC must follow the procedural requirements found in 37 Pa. Code § 93.10(b). (First Level Appeal Grievance #658528, attached to PFR.) DOC denied this appeal, stating that DOC's first response "appropriately addressed" Williams' issues. (Facility Manager's Appeal Response, attached to PFR.)

Williams submitted a final appeal to DOC's Chief Grievance Officer, again arguing that DOC did not comply with proper procedure in removing Williams from his work position. (Final Level Appeal Grievance #658528, attached to PFR.) Specifically, Williams argued that DOC misinterpreted the language of Section 1.M.7 of DC-ADM 816. (*Id.*) As Section 1.M.7 provides that Unit Management Teams could remove an inmate for reasons "other than misconduct," Williams

---

[2] DC-ADM 816 pertains to inmate compensation. Section 1.M.7 of DC-ADM 816 provides:

> Removal of an inmate from a work assignment for reasons other than misconduct or medical necessity must be handled by a Unit Management Team action. The supervisor must submit written information regarding the reason(s) to the Unit Management Team, who will discuss the situation with the inmate and attempt to resolve the problem. The Unit Management Team may remove the inmate from the job assignment and his/her pay may be suspended.

argued that he could not be removed under this section, as he had committed a form of misconduct. (*Id.*)

DOC again denied Williams' appeal, as Williams presented "no evidence that DOC policy DC-ADM 816 was violated." (Final Appeal Decision, attached to PFR.) Williams then filed the instant action in our original jurisdiction, seeking a myriad of declaratory, injunctive, and compensatory forms of relief relating to DOC's interpretation of Section 1.M.7 of DC-ADM 816 and, as Williams alleges, DOC's use of DC-ADM 816 to circumvent the procedural requirements provided in 37 Pa. Code § 93.10. (PFR at 14-16.)

In his petition for review, Williams avers that DOC is removing inmates from their job assignments using DC-ADM 816 as a means to bypass any hearing requirements. Williams contends that DOC is attempting to bypass these hearing requirements because the hearing examiner "dismiss[ed] so many misconduct reports because staff were not following proper procedures." (PFR at 16.) This process, Williams alleges, is in violation of his due process rights contained in the DOC Inmate Handbook[3] and this Court's holding in *Bush v. Veach*, 1 A.3d 981 (Pa. Cmwlth. 2010), wherein we held that DOC must comply with the procedural requirements found in 37 Pa. Code § 93.10(b) when it is attempting to permanently remove an inmate from his job detail after the issuance of a DC-141. In response, DOC filed a preliminary objection in the nature of a demurrer to this action,

---

[3] We take judicial notice of the Inmate Handbook, which appears on the DOC official website at:
http://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/2017%20DOC%20Inmate%20Handbook.pdf. *See Figueroa v. Pa. Bd. of Prob. and Parole*, 900 A.2d 949, 950 n.1 (Pa. Cmwlth. 2006) (taking judicial notice of information found on DOC website) (last visited Jan. 23, 2018).

4

challenging the legal sufficiency of Williams' claims. Specifically, DOC averred that Williams has failed to state a claim under which relief can be granted.

In ruling on preliminary objections, we accept as true all well-pleaded material allegations in the petition for review and any reasonable inferences that we may draw from the averments. *Meier v. Maleski*, 648 A.2d 595, 600 (Pa. Cmwlth. 1994). The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in the petition for review. *Id.* We may sustain preliminary objections only when the law makes clear that the petitioner cannot succeed on the claim, and we must resolve any doubt in favor of the petitioner. *Id.* "We review preliminary objections in the nature of a demurrer under the above guidelines and may sustain a demurrer only when a petitioner has failed to state a claim for which relief may be granted." *Armstrong Cnty. Mem'l Hosp. v. Dep't of Pub. Welfare*, 67 A.3d 160, 170 (Pa. Cmwlth. 2013).

DOC argues that Williams' petition for review fails to state a claim for which relief can be granted because due process is not triggered unless there is a right in issue. As inmates have no right to a prison job, DOC argues Williams' due process claim is insufficient. Further, DOC argues that its interpretation of DC-ADM 816 is controlling. DOC interprets the language "for reasons other than misconduct" in DC-ADM 816 to mean "for reasons other than the issuance of an inmate misconduct." As administrative agencies are to be given deference in their interpretation of their own regulations, DOC argues that Williams was not deprived of due process.

Williams concedes that he does not have a right to a prison job, and as such, does not claim a violation of his due process rights. (PFR at 10.) Instead,

5

Williams argues that DOC's actions are contrary to its own policy. Specifically, Williams points to DC-ADM 801 within the Inmate Handbook, which provides that all rule violations are to be reported on a DC-141. A DC-141 is used to give notice to an inmate of the rule violation with which he has been charged. Following the issuance of a DC-141, the violation is disposed of through either a formal process or an informal process, depending on the severity of the reported misconduct. Types of misconduct delineated as Class I charges must be disposed of through formal resolution proceedings, whereas Class II charges are eligible for informal resolution proceedings. The issuance of a DC-141 for the violation of a DOC rule or policy, therefore, triggers the procedural requirements provided in 37 Pa. Code § 93.10(b).

This Court has previously held that "before [DOC] can impose any sanction, it must follow the procedure set forth in [37 Pa. Code § 93.10(b)]." *Bush*, 1 A.3d at 984. In *Bush*, DOC removed an inmate from his job in the prison's kitchen after DOC caught the inmate stealing food from the kitchen. *Id.* DOC informed the inmate that his misconduct resulted in a Class II charge, and, as a sanction, DOC removed the inmate from his work assignment. *Id.* at 985. DOC removed the inmate without first providing written notice, a hearing before an impartial hearing examiner, an opportunity to present evidence, and a written decision or an opportunity to appeal. *Id.* The inmate filed an action against DOC employees, claiming a violation of his due process rights. *Id.* at 983. Upon review, although we determined there to be no due process violation, we nonetheless concluded that the inmate sufficiently alleged a cause of action for a violation of his rights established by DOC regulations and 37 Pa. Code § 93.10(b). *Id.* at 985.

Here, Williams lost his work position as a result of DOC finding over two pounds of sugar in Williams' boots as he was leaving his work assignment.

6

Williams' actions violated at least two DOC policies outlined in DC-ADM 801, including (1) taking unauthorized food from the dining room or kitchen, and (2) possession of any item not authorized for retention or receipt by the inmate. Both of these offenses are categorized as Class II charges, eligible for an informal resolution process. The penalties for Class II charges can include the loss of an inmate's job for work-related misconduct. DOC, however, did not issue a DC-141 for Williams' actions, and instead removed Williams from his job assignment through the procedure provided in DC-ADM 816.

As previously mentioned, DOC relies on its interpretation of Section 1.M.7 of DC-ADM 816 to support its position. DOC interprets the phrase "for reasons other than misconduct or medical necessity" to mean "for reasons other than *the issuance of a* misconduct," *i.e.*, for reasons other than the issuance of a DC-141. Further, DOC reads our holding in *Bush* to require the procedural provisions of 37 Pa. Code § 93.10 to be implicated only after the issuance of a DC-141. In retort, Williams claims that DOC is using this twisted interpretation to circumvent the requirements of 37 Pa. Code § 93.10(b). Williams' statements, taken as true, provide for a cause of action for a violation of these requirements.

As defined by the Inmate Handbook, Williams' alleged actions could result in a Class II misconduct charge. Despite DOC's failure to issue a DC-141, it nonetheless imposed sanctions upon Williams commensurate with a Class II misconduct charge. While DOC may be correct in stating that it has discretion as to whether to issue a DC-141, DOC may not use the removal procedures for removal in situations "other than misconduct" set forth in Section 1.M.7 of DC-ADM to remove an inmate from a job position based on what amounts to work-related misconduct. To hold otherwise would allow DOC to circumvent the

7

procedure for job removal in the case of work-related misconduct explicitly set forth in 37 Pa. Code § 93.10(b).  Per Williams' petition for review, Williams' misconduct was the impetus underlying DOC's removal of him from his job position.  Thus, it is not clear at this stage of the proceedings that Williams has failed to state a claim for which relief may be granted.  *See Armstrong Cnty. Mem'l Hosp.*, 67 A.3d at 170.

Accordingly, we overrule DOC's preliminary objection based on demurrer.

P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James H. Williams, :
                Petitioner :
                 :
        v. : No. 82 M.D. 2017
                 :
John E. Wetzel (Secretary of :
Corrections) Dorina Varner (Chief :
Grievance Officer) Barry Smith :
(Facility Manager, S.C.I. Houtzdale) :
Susan McQuillen (I/M Employment :
Officer) (Houtzdale) Ginter (Unit :
Manager, S.C.I. Houtzdale) Pittsinger :
(Food Service Manager, Houtzdale) :
Derring (Food Service Staff Member, :
Houtzdale) Pa. Department of :
Corrections Officials, :
                Respondents :

# *O R D E R*

AND NOW, this 25th day of January, 2018, the preliminary objections filed by the Respondents in this matter is OVERRULED. Respondents are directed to file an answer to Petitioner's petition for review within thirty (30) days of the date of this order.

 

 

                                            _____
                                            P. KEVIN BROBSON, Judge